Our next case will be 21-19-70 and 21-24-84 United States v. Christopher Torres Thank you, counsel. Good morning, may it please the court. Yan-Chan Lee, federal defenders for appellant Christopher Torres. The district court here erred when it took and accepted a felony guilty plea from a physically absent defendant by telephone. This guilty plea by conference call violated the principle deeply rooted in our system of justice and integral to our system of justice that a defendant must be physically present in court in the solemnity of the courtroom and before a judge for this most solemn and significant act. We now have the LaRue case. I mean, how is this case, why isn't this case controlled by LaRue? Well, so LaRue is different because it concerned the sentencing. And this court has allowed waivers of the right to be present at sentencing since even before the CARES Act. And in fact, Rule 43 allows this. Rule 43 specifically allows a defendant to waive his presence at sentencing. Can I ask, we've got the Rule 43 slash CARES Act, what I'm going to call the statutory package, and then there's the constitutional right. Putting aside whether or not under Rule 43 in the CARES Act you can waive presence, can you not waive the right to be present in a constitutional sense? Well, it's a, you know, we don't say, so we're not arguing that the CARES Act, which cards out for the first time ever an exception to the mandate presence at guilty plea, the felony guilty plea. So we're not saying that the CARES Act is unconstitutional. But we're saying that it does go against, you know, hundreds of years of precedent. So the right to be present is not waivable? Well, the right to be present. The constitutional right to be present. So it's sometimes waivable and sometimes it's not. So I think it's a misnomer to call it a right of presence, to be present. It's really many different rights to be present that depend on the proceeding. Sometimes it's truly a right in the sense of a privilege that belongs to the defendant and that's waivable with the consent of the defendant. Other times it's not a right at all. It's simply a requirement of our legal system. Do I understand your argument to be that this right is so important that careful compliance with the law that governs the waiver and which requires findings of exigency needs to be enforced? And they were made. That's exactly right. So the CARES Act carves out this narrow exception as a temporary measure during the unprecedented COVID pandemic, right? It's an emergency measure. And so it does go against the constitution, you know, a lot of constitutional values. So is your view that Rule 43's constraints on when you must be present and when you can and can't waive are coextensive with the constitutional and embody the constitutional limits? I think for the most part, yes. So in our case where it's not a trial situation, it's governed by the due process clause. And the due process clause is always a flexible standard. And so, you know, it depends on the nature of the proceeding, right, and the importance of the defendant's presence to that proceeding. And there's really, Your Honor, there's no more important event than a felony guilty plea, and it's an event in which obviously the defendant plays the starring role. The idea that you can take a felony guilty plea in which the defendant not only waives the Fifth Amendment right, Sixth Amendment right, and in fact transforms himself into a convicted felon. Was the guilty plea more important than the sentencing? Your Honor, traditionally, the right to be sentenced, you could waive your right to be present in sentencing. That's long been the rule. Traditionally, it has not been the rule. Is the argument that you can never waive your right to be physically present for a guilty plea? So our argument is that apart from the CARES Act, yes, absolutely. In fact, Rule 43 states it not as a right, but a mandate. So you said a moment ago you're not arguing at the CARES Act it's unconstitutional. So I'm not quite sure where you are. So where I am is – I mean, it can be waived under the CARES Act if it's properly done, and it wasn't properly done here. Is that the argument, or what is it? That is essentially the argument.  That's because the exception sort of implicates constitutional values, right? That you've got to read the exception really carefully and narrowly, and that the government and the court has to really cross every T and dot every I in order for this temporary emergency exception to apply. Well, it certainly seems that there was a violation of that requirement here. Is it subject to harmless error? No, Your Honor. So it's a violation of – Isn't it just the kind of thing that is subject to harmless error? Oh, no, Your Honor. In fact, I think it's exactly the sort of thing that isn't for two reasons. First, because it goes – just like the – so this Court has already said in Cannati that returning a verdict, right, in a bench trial without the defendant being present, that that's considered a structural error, both because it goes sort of the framework of the whole case and because it's not the sort of error where you can really sort of evaluate the harmfulness on the defendant. It's just the kind of error that just sort of so undermines our values that we don't do a prejudice kind of analysis that we normally do. And so if returning a guilty plea in the defendant's absence is structural error to which prejudice analysis is inapplicable, certainly the idea of having someone plead guilty while being physically absent, that that's a structural error, because we can't really – it's not like there's a harm to the defendant that we're mostly concerned about. It's a harm to our system of justice. But I would also add this, Your Honor. It's that we don't raise a specific Rule 11 error here, right? We don't say that, you know, the Court failed to tell them that the maximum penalties are ever – but I would remind the Court of how little we have to base a judgment that the defendant has knowingly and voluntarily waived these core constitutional rights because this was just a telephone call. These are disembodied voices. Maybe I'm misunderstanding your argument. I thought the argument was it doesn't matter whether a defendant knowingly waived this because the only hook for a cognizable waiver is the CARES Act, and they didn't comply with the CARES Act because there's no specific finding as to the interest of justice wholly apart from the consent factor. Yes, Your Honor. That is – that's the core argument. I was simply sort of giving you sort of the atmospherics as well, is that it's not just a legal technicality here. It's also that, you know, it's almost like the famous New Yorker cartoon of a dog typing on a computer and telling the other dog, you know, the Internet's great because nobody knows you're a dog. Okay? So this is a phone call with disembodied voices. Now, I would be facetious to say that we don't even know that it's Mr. Torres on the phone. But the point is that this is not the sort of thing – a person is declaring himself to be a convicted felon subjected to 20 years' imprisonment over the phone. So if you're doing plain error review, one of the things you would look for is any sort of suggestion that it wasn't, in fact, a defendant or it wasn't, in fact, a no on the voluntary plea, that there was something about the fact that it was done telephonically that compromised our confidence in the guilty plea. I didn't see that here. So, yes, I understand. That's – our principal argument is that any sort of harmlessness analysis is inapplicable because it's a structural error. And in terms of the plain error analysis, I think it's part and parcel of that, the same. That certainly prejudice, in our view, would be assumed because it's a structural error. That's what structural error takes care of. And certainly the fourth plain error problem is taken care of because our argument is that doing this telephonically damages the reputation of the judicial system. This is just not the sort of thing that we should allow to be done by telephone. But isn't the – isn't that baked into plain error review, that there has – that you can overcome plain error if it does harm to the perception of the judicial system? Well, I think that we could – our view, again, is that plain error review is just not applicable. I understand that. Even if it were, I think we do actually meet all four standards. Our view is that it's plainly erroneous because it contradicts hundreds of years of precedents, and then also because it's absolutely clear there were no findings here at all. So there's plainly an error. And then whether it prejudices the defendant, our argument is that prejudice is taken care of by the – How? How does it prejudice him? I mean, if it's redone – if it's redone, what does he want? Does he want to not plead guilty? Well, our view – you know, we're seeking the vacator of the plea, that's all. And then to sort of restore him to the position that he was in before he pleaded guilty. At that point, he could decide to plead guilty. But there's no harm unless he takes the position now that he does not wish to plead guilty. Well, this – And either wants to renegotiate with the government or – But again, Your Honor, I think that even under plain error review, the idea is that the harm may not – doesn't necessarily have to fall on the defendant. It's a harm to the system of justice. We just need to argue. That's our principle argument. Our argument is also that traditional – traditional notions of waiver, which the government heavily relies on – because, yes, we concede – I mean, obviously I'm conceding. The defendant consented to the telephonic plea. We – you know, the lawyer consented to it. And so the government is obviously relying on consent to say let's waive. The argument is waived. And our argument is that in this particular instance, this is just something that you cannot waive. This is not something – this is not – the requirement of being physically present is not – does not belong to the defendant. It belongs to the system of justice. And that's true both as a constitutional matter and as a matter of FRCP 43 and – That's right. That's right. And the only – so – and even – so Rule 43, again, defendant must be present. It's not a right. It's a mandate. And then the CARES Act, even under the CARES Act, for the exception, consent is necessary but not sufficient, right? So just because the defendant consented, that's not even enough to trigger the CARES Act exception. And so for all these reasons, we would ask the court to vacate the guilty plea and remand for further proceedings. Thank you. Now I'll hear from Attorney Escara. May it please the court, Rashmi Bhaskaran, Assistant United States Attorney representing the appellee in this case. Your Honors, as an initial threshold matter, appellate review of Torres' claim is foreclosed because he waived his claim. Torres expressly consented to the remote plea proceeding that he now complains of and he also failed to object to it at any point in time until this plea. A waiver will result from a defendant's intentional decision not to assert a right. And here, there are at least five occasions in the record where Torres or his counsel Well, suppose he waived and, therefore, suppose this failure to make the requisite and it's an error and it's plain. And he wants to rethink that which he was compelled to undergo on the telephone and that this is a matter that affects respect for the judiciary and the American system of justice. So what do you say? So assuming that there was an error that was plain in this case and it is our submission that there was no error, let alone a plain error, and I would note that this court's decision in United States LaRoe is controlling here. LaRoe was decided just a few months ago and well over a year from when the plea in this case took place. And so any error here, if there was one, couldn't be plain in the absence of controlling Second Circuit or Supreme Court case law addressing the contours of the CARES Act's interest of justice requirement. But what if something violates the statute? Isn't that plain? Well, in this case, Your Honor, it is the government's submission that the district court did make a sufficient interest of justice finding in this case. That's a different issue. I mean, that's a prior issue. But doesn't – I mean, it's interesting that you say LaRoe is controlling because I might have thought you would want to run from LaRoe a little bit because in LaRoe there was a fairly searching inquiry as to whether there was a case-specific interest of justice finding that was adequate to satisfy the CARES Act. And because the court had specifically talked about, well, this gentleman is seeking a time-served sentence and given that, that adds a sense of urgency to timing, et cetera, et cetera, there's nothing like that here. There's a conclusory finding read by the government acquiesced to by the court with no case-specific anything. Doesn't – under LaRoe, isn't it clear that this doesn't satisfy the CARES Act? Well, under LaRoe, I think it's important to note that there were two sentencing issues in LaRoe. In the first sentencing, the June 2020 sentencing, Judge Abrams made a similar interest of justice findings as Judge Keenan did in this case. And what LaRoe held was that this court can consider the record as a whole in determining whether those interest of justice findings were sufficient. And it is our submission that the record as a whole does support the interest of justice finding that Judge Keenan made in this case. The trial in this matter, Christopher Torres' trial in this matter, was scheduled to begin within 13 days of the plea. Pre-trial motions were due within three days. And Judge Keenan stated, and this is on the docket, that that trial date was firm. Meanwhile, Torres has signed a plea agreement weeks before this plea agreement – weeks before this plea. That plea agreement permitted him to plead guilty to count two of the indictment, possession of child pornography, where – and the government would move to dismiss count one of the indictment, which charged him with distribution of child pornography, which carries a five-year mandatory minimum sentence. And was any of this in the record of the actual – I mean, I'm not sure viewing the record as a whole was an invitation to the appeals court to look through the entire docket and try to construct an argument so much as to say, well, if there had been a fair amount of discussion about this fact, even in the absence of the court encanting the magic words, we might be able to uphold the finding. To be certain, none of this was articulated by the district court judge at the time of the plea or any time thereafter. But all of this information was before the court. The fact that a trial was scheduled to begin within two weeks. The fact that pretrial motions were due just within three days of the plea. Well, how could anyone think that a trial was about to begin when the man couldn't even come into court for his plea? Mr. Torres could have stated – Mr. Torres was asked at least on four occasions whether or not he agreed to proceed by telephone. And whether he understood that he had the right to be there physically. If he wanted to plead guilty in person, he could have said so. But he did not do that. And on five occasions, when asked directly whether or not he agreed to proceed by telephone, he said that he did. And when the government asked the district court to make a CARES Act finding, and it did by adopting what the government said during that plea proceeding, his lawyer did not object to that finding. So it sounds as though he pretty much had to agree to plead by phone because the judges said otherwise we're going to trial in a couple weeks. He could have also said, Your Honor, I wish to proceed guilty – to plead guilty, but I would ask an adjournment of the trial date to permit so there could be a time. The judge had said there would be no adjournment of the trial date. I think you just said that. That's what the district court just said, but there was never an application. When a district judge says a thing, it usually has ramification. Understood, Your Honor. But if his defense counsel believed that this plea should have been in person, and they could have inquired at the district court of whether or not that plea could be in person, but they never did so. Instead, they just consented over and over and over again to proceed with this plea by telephone. So is this – one thing I'm trying – the question was really about the interest of justice finding, and the answer was all about the waiver. And so I want to go back to this interest of justice, and you've identified features of the record that could support an interest of justice finding, regardless of whether that was what the court did. So this was not at a time in the course of the COVID pandemic when trials were on hold. In fact, was set for trial that was going to potentially be held, or was this during a period when trials weren't happening? I believe trials were happening at this time. It was certainly difficult to hold trials, and there was a complicated scheduling process that was happening in order to handle them. Jury trials? Criminal jury trials? Criminal jury trials. There were periods in 2020 and 2021 where jury trials were not being held, particularly in January and February. But I can't recall at that point whether no jury trials were being held, but I do believe that they had begun again. Well, Judge Keenan was saying we'll have a trial in two weeks. That would suggest that he thought he could try a case in two weeks, right? That's correct, Your Honor. He's not going to say that just as a bluff to coerce the defendant into pleading guilty? Absolutely. Absolutely. And another aspect of the interest of justice finding here in terms of the record as a whole is that Torres' acceptance of responsibility played an important feature in his sentencing argument. He appeared for sentencing in July of 2021 in person. I note that at no point did he try to withdraw his plea. He appeared in person for sentencing, and his acceptance of responsibility by pleading guilty was an important feature of his argument for a time-served sentence. His counsel argued that he finally got it. He's accepted responsibility. He agreed in his plea agreement to pay restitution, and therefore a time-served sentence would be sufficient but not greater than necessary in this case. So for those reasons, we believe that the record as a whole supports the court's interest of justice findings. To be sure, those findings were sparse, but particularly under a plain error standard, assuming the court doesn't find that there is a true waiver here, there was no error at all in light of the record as a whole. We also argued that the error certainly was not plain in light of the fact that LaRue was decided well over a year from this plea proceeding. But the statute existed, and the statutory requirements existed. It did. It did. But it is our view that the court satisfied what the statute requires and also satisfied what the statute requires as interpreted by LaRue. But even under a plain error review, even if there was an error and the error was clear and it was obvious, there really can't be any argument here that the error affected Torres' substantial rights. And we believe the fact that he never attempted to withdraw his plea is dispositive on that point. I see that I am running out of time, but if there's any further questions, we rest on our submissions. No, we appreciate your arguments. Thank you. Attorney Lee, rebuttal. So, I mean, you agree that at least five times the defendant said, I'm okay with the proceedings? I'm not sure if it's five times, but, yes, at least two or three times. What should Judge Keenan have done? Said, no, I don't believe you. I want you to come in in person. Well, I don't. Judge Keenan, you know, could have complied with the CARES Act, right? There's just a very clear requirement of us. So the argument is noncompliance with the CARES Act. Not that a guilty plea can never be done telephonically. No, the argument is the Rule 43 in the Constitution says that you should never do this telephonically. But as a temporary emergency measure during the pandemic, if you complied with all four conditions, yes, we could. But he didn't do that. This was, by the way, it was an 84-month sentence.  It was substantially below the guidelines. Yeah, I mean, what's going to happen if we agree with you in remand? Is he going to do better? He may or may not. You know, I represent the client, and I abide by his wishes. If I may, very quickly, just three points. First, LaRue. LaRue just doesn't apply here in the way the government thinks because it's about sentencing. And this Court just last week said, and Judge Shin, you were on the panel for U.S. v. Sealed Defendant 1. This Court just last week said that. I was on the panel for LaRue also. So what the Court said was that we don't even have to get to the CARES Act when we're dealing with waiver of the sentencing because Rule 43c already allows it. So that's just something that's always been allowed. And then the second thing that, you know, to go to your point, Judge Robinson, that the, you know, the Court in LaRue called the findings, the district court's findings, sparse. I mean, if the findings there were sparse, there's nonexistence here. I mean, so this case is unique in that way. I mean, I've seen a lot of cases and district judges usually enter a written order of specific findings. Most often they'll say something, you know, some sort of, like in LaRue, say something. Here, there's literally nothing. You know, the principal purpose of these kinds of requirements, right, is to enable appellate review. I don't see how this Court can do any sort of review on this record. Does the client understand that if he succeeds in withdrawing his guilty plea that he may be charged again and that when he will be charged again and that when at his next conviction or his next plea, he may not get credit for acceptance of responsibility? Absolutely. And the net effect of the whole initiative will be to serve longer in jail. So it's like, I mean, winning this appeal is like the fly that conquers the flypaper. I understand that. All I can say is that we've fully informed the client of all the possible consequences of all we do for every appeal, that it's not always a positive outcome. Even sometimes it's a positive outcome from this Court. It doesn't always end up a positive outcome. You can lose by winning.  Yes, losing by winning happens. Yes, Your Honor. And then finally with this point that the government talks about the trial date in 13 days and then the sentencing occurred just a few months later, right? So this actually just shows you that this telephonic plea was entirely unnecessary. I mean, so they could have done a plea live in two weeks. The sentencing was in person? The sentencing was in person, too. Thank you for your argument. Appreciate it. That concludes this case. We'll take it under advisement. Thank you both.